Opinion issued
September 29, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00515-CV

———————————

RUSSELL THOMAS BOYD, Appellant

V.

CHRISTINA MICHELLE PALMORE, Appellee



 



 

On Appeal from the 280th District
Court 

Harris County, Texas



Trial Court Case No. 2010-11113

 



 

DISSENTING OPINION

          Russell Thomas Boyd’s sole appellate
point argues that the acts
proven as the basis for the protective order do not qualify as family violence
and thus the grant of a protective order
against him is not supported by legally or factually sufficient
evidence.

            In an obviously misguided effort to communicate with his child’s mother, Boyd, a man with emotional and other issues (including a voluntary commitment to a mental health facility), had messages sent to the woman that falsely reported that he had committed suicide; he told her (whether truthfully or not is not a part of the record before us) that she was under surveillance (tracking devices on her vehicle; private investigator; hidden video cameras); and he jumped atop the hood of her car to compel her to stop and talk to him.  This case rises or falls on the determination by the trial court that jumping onto the hood of a vehicle is an act “intended to result in physical harm, bodily injury, assault, or sexual assault” (of another . . . not the ‘hood jumper’) and/or “is a threat that reasonably places the (family or household) member in fear of imminent physical harm, bodily injury, assault, or sexual assault . . . .”  Tex. Fam. Code Ann. § 71.004 (Vernon 2002).            The operative word here is reasonably.  I would hold that one distraught ex-lover’s attempt to block the path of a vehicle traveling sufficiently slowly as to allow one to jump upon the vehicle’s hood cannot reasonably be construed or characterized as “intended to result in physical harm, bodily injury” of the one in the vehicle driving, or as a threat to that driver’s “imminent physical harm [or] bodily injury . . . .” [1]  See Tex. Fam. Code Ann. § 71.004 (Vernon 2002).  Yet the majority opinion characterizes this over-wrought stab at drama as “family violence.”  Is “hood jumping” to be forevermore enshrined in Texas jurisprudence as an act of family violence?  To do so would not be mere overreaching, but grasping in a judicial sense as sadly as Boyd’s own failed attempt at meaningful face time.      Although Palmore testified about “increasingly worse” threats and “verbal abuse,” the record is devoid of testimony descriptive of any such threats.  She did not, for instance, testify that Boyd threatened her with “imminent physical harm, bodily injury, assault, or sexual assault.”  See Tex. Fam. Code Ann. § 71.004 (Vernon 2002).   As there is no evidence of what constituted the threat, there can be no evidence that whatever “it” was could reasonably place a family member in fear of “imminent physical harm, bodily injury, assault, or sexual assault,” notwithstanding her testimony that she was “scared for her life.”  See Tex. Fam. Code Ann. § 71.004 (Vernon 2002).

            The majority affirms the trial court’s
order.  As I do not read the record as
supporting a finding that the acts of standing in front of a vehicle or of
jumping up onto the hood of a car (no matter the credibility or weight one’s
testimony describing such acts is to be given) can cause, or place the driver
of the vehicle in reasonable fear of,
imminent physical harm, bodily injury or an assault, I respectfully dissent.

 

FACTS

          Christina
Palmore had a child with Boyd.  They had never married, but had lived
together.  In December 2009, after their
relationship ended, Palmore and Boyd agreed to the
entry of an order that established visitation for the child.

          In
February 2010, Palmore filed an application for a
protective order against Boyd.  The trial
court held an oral hearing on the application. 
Palmore testified that she was afraid of Boyd
and wanted a protective order to protect both her and her 19-month-old
daughter.  She further testified to the
following acts by Boyd:

1.     “Increasingly worse” threats
and “verbal abuse” (Palmore never testified as to
what Boyd said that threatened her or described the verbal abuse);

 

2.     “Talk of possible hidden
cameras in my house;”

 

3.     An October 2009 incident in
which Boyd blocked her with his body from leaving and jumped on the hood of her
car; 

 

4.     Text messages that falsely
reported that Boyd had committed suicide;

 

5.     Boyd’s report to her that he
had voluntarily admitted himself to a mental hospital; and

 

6.     Boyd’s report to her that he was having a private investigator follow
her. 

          Palmore’s testimony did clarify that the incident in which
Boyd jumped on the hood of her car was the only “remotely physical” incident
between them and that he had never caused her physical or bodily injury or
assaulted her. 

After an
oral hearing, the court, specifically finding that Boyd had committed family
violence and was likely to do so in the future, granted
the motion for protective order.  Boyd
appeals the grant of this order.

LEGAL AND FACTUAL SUFFICIENCY

          In
his sole issue, Boyd claims that the acts which were proved as the basis for
the protective order do not qualify as family violence and thus the trial
court’s finding that family violence has occurred in the past and is likely to
occur in the future is not supported by legally or factually sufficient evidence.

A.   Standard of Review

When the
trial court acts as a fact-finder, we review its findings under the legal and
factual sufficiency standards.  In re Doe, 19 S.W.3d 249,
253 (Tex. 2000); Vongontard v. Tippit,
137 S.W.3d 109, 112 (Tex. App.—Houston [1st Dist.] 2004, no pet.).  When a party who does not have the burden of
proof at trial challenges the legal sufficiency of the evidence, we consider
all of the evidence in the light most favorable to the prevailing party,
indulging every reasonable inference in that party’s favor and disregarding
contrary evidence unless a reasonable fact-finder could not.  City of
Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005); City of Houston v. Hildebrandt, 265 S.W.3d 22, 27 (Tex.
App.—Houston [1st Dist.] 2008, pet. denied) (citing Assoc. Indem. Corp. v. CAT Contracting, Inc.,
964 S.W.2d 276, 285−86
(Tex. 1998)).  “If there is any
evidence of probative force to support the finding, i.e., more than a mere
scintilla, we will overrule the issue.”  Hildebrandt, 265 S.W.3d at 27 (citing Haggar Clothing Co. v. Hernandez, 164 S.W.3d
386, 388 (Tex. 2005)).

In
reviewing a factual sufficiency complaint, we must first examine all of the
evidence.  Lofton v. Texas Brine Corp., 720 S.W.2d
804, 805 (Tex. 1986).  Having
considered and weighed all the evidence, we should set aside the verdict only
if the evidence is so weak, or the finding is so against the great weight and
preponderance of the evidence, that it is clearly wrong and unjust.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).  We cannot merely substitute our opinion for
that of the trier of fact and determine that we would
reach a different conclusion.  Hollander v. Capon, 853
S.W.2d 723, 726 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

B.   Family Code Provisions Concerning Protective
Orders

A court
shall render a protective order if the court finds that family violence has
occurred and is likely to occur in the future. 
Tex. Fam. Code Ann.  § 81.001 (Vernon 2002).  Family violence is defined as:

(1)  an act by a member of a family . . . against
another member of the family . . . that is intended to result in physical harm,
bodily injury, assault, or sexual assault or that is a threat that reasonably
places the member in fear of imminent physical harm, bodily injury, assault, or
sexual assault, but does not include defensive measures to protect oneself . .
.   

 

Tex. Fam. Code Ann. §
71.004 (Vernon 2002). 


          “Family”
is defined in pertinent part as individuals who are former spouses of each
other or who are parents of the same child. 
Tex. Fam. Code
Ann. § 71.003 (Vernon 2002).  “At the close of a hearing on an application
for a protective order, the court shall find whether:  (1) family violence occurred; and (2) family
violence is likely to occur in the future.” 
Tex. Fam. Code Ann. § 85.001 (Vernon 2002).

C.    Analysis

Here, there
is no evidence that Boyd ever caused Palmore physical
harm or bodily injury, and apart from the majority’s characterization of the
“hood jumping,” there is no evidence that he took actions intending to result
in such harm or injury.  Furthermore,
although Palmore testified that she was “scared” of Boyd
because “[h]is threats ha[d] become increasingly worse,” she offered no
testimony as to what it was that Boyd threatened to do or that such “threats”
placed her in fear of “imminent physical harm, bodily injury, assault, or
sexual assault . . . .”  See Tex.
Fam. Code Ann. § 74.001 (Vernon  2002).  In fact, Palmore
did not testify as to any word or action that might indicate that Boyd had in
the past or would in the future pose a threat of physical harm, bodily injury,
assault, or sexual assault.

The text
messages Boyd apparently caused to be sent to Palmore
that reported he had committed suicide cannot be construed as a threat to Palmore’s own safety. 
Nor does the fact that Boyd voluntarily admitted himself to a mental
hospital reflect that he either has in the past or will in the future place her
in fear of such harm.

Palmore did, however, testify that she was “in fear for her
life” when Boyd jumped on the hood of her car. But, as she later testified,
this was the only “remotely physical” incident between Boyd and her.  As noted previously, this incident was not an
act capable of causing physical harm or bodily injury, and there was no
testimony it was “intended to result in physical harm, bodily injury, an
assault, or sexual assault” and thus, did not and could not constitute “family
violence” as defined by the Family Code. 
See Tex. Fam. Code Ann. § 71.004 (Vernon 2002).

Rather, the
actions to which Palmore testified are in the nature
of harassment.  Harassment may at some
point become an active threat.  See Thompson v. Thompson-O’Rear,
No. 06-03-00129-CV, 2004 WL 1243080, at *3 (Tex. App.—Texarkana June 8, 2004,
no pet.) (mem. op.).  Considering the absence of any threat of
physical harm or of any continuing physical confrontation, as well as the lack
of testimony concerning threats of physical harm, I would conclude that the
harassment described herein does not rise to the level of an “active
threat.”  See Gonzales v. Rangel, No. 13-05-641-CV, 2006 WL 2371464, at *2
(Tex. App.—Corpus Christi Aug. 17, 2006, no pet.) (mem. op.) (stating that
Family Code provides that only threats of “imminent physical harm, bodily
injury, assault, or sexual assault” constitute family violence; any other sort
of threat does not support finding of family violence).

Moreover,
the record contains no evidence that family violence “is likely to occur in the
future.”  See Tex. Fam.
Code. Ann. § 85.001(a)(2).  Because Palmore
also failed to establish the second element required by the Family Code, I
would hold the evidence to be legally insufficient to support the trial court’s
order, see Gipson v. Huerta, No.
13-02-00490-CV, 2003 WL 21666140, at *2 
(Tex. App.—Corpus Christi July 17, 2003, no pet.) (mem. op.) (holding evidence legally insufficient to
support protective order when appellee failed to
produce evidence that family violence was likely to occur in future), sustain
appellant’s sole issue, reverse the trial court’s protective order, and render
judgment that appellee’s request for a protective
order is denied.

 

 

                                                                   Jim
Sharp

                                                                   Justice


 

Panel consists of Chief Justice Radack and
Justices Sharp and Brown.

 

Justice Sharp, dissenting.

 


                                                                   

 

 











[1]           The same cannot be said for Mr. Boyd, whose lovelorn stunt
could easily have resulted in “physical harm or bodily injury . . .” to himself.